Good morning, your honors. May it please the court, Federico Castellanser for the plaintiffs in this case. The core issue of this appeal is very clear, and it revolves around the statute of limitations. I don't think anybody of good faith would find that there wasn't justice on the part of the plaintiffs in this case. The issue is whether or not they're going to be able to recover. We basically stand or fall on the Garcia case and its persuasive effect on this court. We have striking similarities in terms of the core issue. The core issue being whether or not the statute of limitations began to run when the Saigon branch closed, or whether the statute of limitations began to run when we made a formal demand on the part of these people, the Vietnamese refugees, now Americans, at the time that we filed our formal complaint in this matter. What law do we apply? We know the result under New York law. We're not quite sure what the law is under Vietnamese law. What's the California rule? The California rule, well, this is for you to decide. I believe that the persuasive, the California law, if California law were to apply, it would say that there is no statute of limitations with regard to deposits that are made with a bank. That would be the case if it were California law. Why do we apply, or should we apply California law? Well, I don't know that you can or should specifically, but I believe the premise of our position in this case is that there has been a tolling even with regard to New York law. What we have is a situation under Garcia, which was decided on the basis of New York law by the Court of Appeals of New York, which, of course, is their Supreme Court. The Court of Appeals in that case, in a strikingly similar case, said there was no unequivocal repudiation, and therefore there was no, in a sense, an anticipatory breach that could or should have been relied upon by the plaintiffs in that case. Isn't there clear repudiation here? If you inquire, do you have my deposits? And the bank responds not saying you've made request or demand and we're denying it, but rather, we don't have your deposits. The government of Vietnam has. Is that not the equivalent of a denial? Garcia says no. In Garcia, the court said, the letter from Chase merely recounted the actions of the Cuban government, meaning taking over the money, and referred inquiries to the National Bank of Cuba. Precisely the situation here with the court, the bank said, well, the communist regime, or whatever they call it in terms of its official name, took over the money and see them about your money. Now, could that be inferred that there was a repudiation? Yes, but the Garcia court found that that was not an unequivocal repudiation, and therefore, did not require the statute to run at that time. But counsel, wasn't the Garcia case interpreting New York law, not California law? Which is why I said that even if New York law applies, that equity requires that there be a tolling of the statute because there was no repudiation. Is it a tolling or just simply doesn't begin to run? Doesn't begin. That's a better word, sir. And it is that the statute doesn't begin to run until if there is no repudiation. And this is the banking law of the United States of America. What does there have to be in order for there to be a repudiation? A demand and a denial? Yes, a demand that we want our money, as opposed to simply an inquiry saying, where is the money? And a statement saying, you can't have your money, you're not entitled to it. Factually speaking, the allegations that we have made follow exactly the type of response, an inquiry, and a response that says, well, your money's over there, go see them. And after all, why did these people go there? If our allegations are proven to be correct, they were not allowing Vietnamese, and in one case, an American serviceman who was married to a Vietnamese, to recover their money. At the same time, they were advertising to take in people's money, assuring them that their money would be safe. And why wouldn't people believe that, as they did in Garcia? This is an international bank, Chase Manhattan City Bank. These banks are known to be international in nature. We know, as a matter of logic, they don't put money in a little strong box in Saigon. It goes out and it's invested. You've given us an interesting little principle of Vietnamese law, a branch can't be, at least at the time, a branch cannot be an independent entity. It must be part of the corporate governance. Was that made, is that a recently discovered item included in your brief, or did Chase and Citicorp all along tell your clients, they've got the money, regardless, and let you know as well that we are all one entity, the branch isn't a separate entity. Well, I guess, if I may, there's two questions in that. Question number one is, was the law such at the time that Vietnamese law prevented people, banks, from saying this is a separate entity? And the answer was, that was well known. Question number two, the bank never said, we repudiate this, or we're not responsible for this because of some branch in Saigon that shut down, but rather they advertised themselves as an international bank, bank of international reputation where your money would be secure if you put the money into our bank. Just like Garcia, our people, our plaintiffs would not have put the money in that bank if that money wasn't going to be, in their view, as they saw it, as they relied upon it, secure no matter what happened. After all, if the debt could be simply assumed by the new communist regime, then Garcia would have been decided differently. One more question I have on Garcia. Yeah. Would this decision be proper under the law if the court, at a minimum, had required a showing, or was there, in fact, a showing, that Citicorp and Chase had, in fact, given up the deposits to the Vietnamese government? In other words, the money was either still there in the vault or was outstanding in loans to Vietnamese citizens and entities when the communist government took them over. If the court below had required that showing, or was that showing, in fact, made, would not this ruling be proper? Garcia does not apply. Garcia did hold that if a clear and unequivocal repudiation of the debt obligation had occurred in the facts of that case, that would have commenced the limitation period. And would that showing not, in fact, be made if, in essence, Citicorp and Chase show to the court below that the Vietnamese had the money, they took it, and that was our response? Go talk to them. They've got the deposit. But that precise response in Garcia was found not to be clear and unequivocal by the Court of Appeals in New York. And that is the same response that was made to the plaintiffs in this case. That is what we stand on, is that in Garcia, that precise response, or something very akin to it, was not found to be an unequivocal repudiation, and therefore, there was no commencing of the statute of limitations at that time. What about Miguel v. Miguel, the California statute, which provides, excuse me, the California case, which holds that the cause of action accrues when the individual could have made a demand? I understand that, but I believe that the premise, the logic, and the public policy expressed in the Garcia case is what should be the guiding principle in this case. Could you have made, let's assume that we have to apply California law, could you not, could your clients, especially the California residents, not have made a demand prior to their immigration to the United States? Could they have made a demand? No. Well, they were in a relocation camp someplace trying to stay alive, so I think, as a practical matter, they could not have, no. And the fact they were in a relocation place because they didn't have the funds to get smuggled out of a communist country has a direct cause and effect relationship. Remember, we're dealing with, respectfully, a reality here, a reality of what happened to that country, it's the same thing that happened to the country of Cuba, that the totalitarian communist regime took over and completely controlled it. How about after they emigrate, and after a reasonable period of time of resettlement in California, I'm talking primarily about the California residents, there's an allegation that that's the primary plaintiff base. The facts of the matter, and these are all facts and interesting questions to be decided, should be decided by a decider fact, respectfully, are facts which we have alleged people made in the sense of an inquiry, as opposed to a outright demand for the funds. Where's my money? Look to the Vietnamese government for your money. And that's the same response that M. Garcia was found to be not. His suggestion is that there's a misleading Yes. That would have deferred the time period when the demand could have been. Now, not just a suggestion, that's our outright allegation in the complaint, that we were misled and defrauded in the sense as to where our money was, and whether we could get our money back. And that's one of the themes, but that's only one of the themes of our brief, as I'm sure you know, having read it. Our core issue is that statute of limitations, and there are all sorts of equities in favor of my clients on the issues of being defrauded and misrepresented to. But I'm not concentrating on that. I'm concentrating on, let's assume that it wasn't a defraud and so forth, although we have so otherwise alleged, just under the basis of Garcia, that there was no clear and unequivocal repudiation consistent with Garcia. Therefore, the statute didn't begin to run until they came to see a U.S. lawyer he demanded in the complaint. And that was my firm. I'm going to reserve, unless there are any other questions, the rest of my time. Thank you, counsel. Thank you, sir. You're from the bank. May it please the court. Richard Kendall on behalf of two of the banks, Chase and Citigroup, and Angela Padilla will be taking the last five minutes of our time on behalf of Chow Tong. Three district courts considered these precise issues on virtually identical facts about 20 years ago. And they unanimously concluded that the statute of limitations begins to run in ordinary deposit cases, like this one, with the closing of the branch. This is not a case like Garcia, which involved dollar deposits in the form of a certificate of deposit against the background of a statute in New York, which specifically says that a certificate of deposit is not collectible until there's a demand. Here we have ordinary bank deposits made in piastres in the other cases, although there's very little alleged in this complaint, it becomes evident that Citibank was giving 19% interest on piastre deposits in Saigon at that time. Garcia is a very different case. Dollar certificate of deposit with allegations in that complaint and the court believing these allegations for purposes of the analysis to be true, that there were specific representations that this certificate of deposit is payable anywhere in dollars. And by the way, the rate was in that case, three and a quarter percent. In other words, a very typical dollar deposit. What's the significance of the 19%? I assume piastres were enjoying a very high inflation rate. A very high inflation rate and no doubt some political risk associated with them at that time too. The point is that this is a very different fact situation than the fact situation that was presented in Garcia. How is it different? Your entities were obligated to honor that deposit anywhere in the world, perhaps in piastres or their equivalent at the time, but you were obligated to honor it anywhere. I respectfully disagree in just this respect. The law in New York is that the parent is liable for the obligation of the branch if the branch breaches that obligation. But there's a difference and it's an important difference. Unlike in Garcia, there was no representation. You can take your bank card and present it to Citibank or Chase in New York. No representation? There was no denial, was there? Well, there's no allegation in the complaint. You don't disagree with the allegation that the branch was part of the corporate structure, it was not a separate entity? The branch was a separate entity. Was a separate corporation or? But it was an entity whose obligations, if not paid, could be collected within the statute of limitations period by suing the bank in New York. So assuming no takeover, were your two clients not obligated to honor the proof of deposit anywhere in the world? No, they were obligated to make good in the sense of if sued, they would have to pay for the breach that was committed upon the closing of the branch for a period of six years until, of course, New York law. I'm not quite sure I understand your parsing of words. If there had been no takeover and they had taken the proof of the deposit over to a branch in China or in Hong Kong, they could not have demanded payment then and there? That's actually correct. They could not have demanded payment there. Had there been no takeover, then these plaintiffs could have gone to their branch and only to their branch and taken out their piastres. Should we not have required or should there not have been required a showing that in fact the money, the assets were taken over by the Vietnamese government? I mean, for all we know, we can assume that you took those deposits and you took them out of the country. You converted them into dollars or into Chinese or Taiwanese currency. You made loans to entities where it would be more profitable to make loans, namely Hong Kong or Japan or India or someplace else, not in Vietnam. Not only does the complaint allege nothing of the sort, but it alleges that these funds were confiscated by the government. So this is not disputed below. The plaintiff himself or themselves allege that these funds were confiscated. This is not an issue. They say the branch was taken over. They also say that the funds were confiscated. Of course, the funds don't sit there in a vault, right? They're converted. They're taken out of the country. Actually, the funds, I hesitate because we have such a limited record here, but there is- That's kind of the problem. Well, but there is what's alleged in the complaint, which we're bound by. And then we also happen to have the benefit of the cases involving these selfsame banks, selfsame contracts of deposit that we had 20 years ago that describe exactly what happened. And what they do describe is that the assets of the bank were turned over for one week it was the banking authority of the South Vietnamese government, which was then replaced by the communist authority approximately a week later. We have these New York cases, and of course, a New York statute that protects New York entities and banks. Why should we apply New York law? Rather, let alone, rather than Vietnamese, certainly Taiwanese, it sounds to me like Taiwan has a pretty strong interest in having their law applied to the plaintiffs who are Taiwanese. But why should, why does California not have a very strong interest in having California law apply to a majority of plaintiffs who are California residents and who have no competency or ability to make demand on these entities while they are still under the control  or in refugee camps they're from? For several reasons, Your Honor. The first one is one of the cases upon which the plaintiff actually relies. The Edelman case considered this very question having to do with the current residence of the plaintiffs and said, of all of the factors considered in choice of law analysis, that is the least important one. Seems like it's a little different when the person obtains residency after being part of a communist takeover or in a refugee camp they're from. Well, first of all, Your Honor, although there were representations made to the court about refugee camps, let's remember that that's not evidence in this case. And nor is it alleged that all these plaintiffs were in refugee camps. But in Edelman, you had the same situation involving Cuba. And we all know what happened when Castro took over in Cuba. This is another situation of a revolutionary government coming into power. And under choice of law rules, you have to look at the following things. First, by the way, you have a question of whose choice of law rule applies. Is it federal common law, which is what the Second Circuit and the First Circuit have decided? Or is it, as recently held by the D.C. Circuit, the choice of law rules of the forum? So that's actually, it's an interesting question for the circuit. It's never been addressed by the Ninth Circuit. But it comes out the same way, either way. If it is California's choice of law test to begin, Your Honor, with your question, then it's the governmental interest test. And so what does the governmental interest test tell us to do? We have to look at the comparative impairment analysis. So which state's interest is more impaired here if the other state is chosen? New York, we know, feels very strongly about this issue to the extent that the legislature actually passed a law protecting the banks. It is alleged that the failure to pay was a failure that occurred in New York. New York and Delaware have very strong interests in protecting corporate entities as an inducement to have them incorporated there, headquartered there. And that's exactly the sort of interest that the comparative impairment test is designed to vindicate. To the contrary, we have plaintiffs, some of whom are in California, class certified, they could be spread all over the world. Banks have an interest in having one law govern a liability like this, not a patchwork piecemeal of many, many different laws. For the same reason that Taiwanese law applies to Chow Tong, as Your Honor pointed out, because Taiwan has a strong interest in regulating the behavior of its banks, same for New York and New York law for these banks. The second point, Your Honor, wholly apart from the statute of limitations, which does need to be considered, is the fact that we have a specific statute in New York. And there's really no argument that this statute doesn't apply. And the statute was designed to address cases in which there isn't a statute of limitations defense. And because of the basic problem that banks do lose their assets, and that is the view of the legislature, that in that situation, the banks should not be liable. However, for six years after this occurred, the banks would have been liable because that statute was not enacted until 1994. The statute of limitations is six years from the closing of the branch. You move forward six years. One other point, Your Honor, on statute of limitations is that this has been settled law since the fall of Tsarist Russia. With the fall of Tsarist Russia, there was a lot of litigation involving what would happen with the confiscation of those assets by the communist government. And it was much litigated, and the same law that was cited in the three district court cases below, all comes from that period of time. And it is clear that the closing of the branch begins the accrual of the claim. That has been applied in a variety of different contexts, ranging from statute of limitations to valuation of the deposit. But in banking, it's very important to keep the goalposts in the same place. Counsel, let me just ask you, if you were representing the other side, and specifically one of the depositors who now has escaped from Vietnam, is in the United States, what should that depositor have done? What the depositor should have done is what many depositors did, if you read the cases that have been decided, which is send some form of communication to the New York office of either one of these banks and say, you closed your branch, I wasn't able to recover my piastres, I had 3,222 piastres on account, please send me my deposit. That's what they should have done. And you would concede that the bank has an absolute duty to deliver at that point? Within that six-year period, yes, Your Honor. And that's clearly the law. The full response here, maybe these requests were even late, but assuming they were timely, your response here was, we don't have your deposits. Talk to the government of Vietnam. The allegation is that, in essence, is a tolling, and even an equitable tolling, because you simply sent them down the wrong path. The answer to that is that they knew about the breach, because they knew that the branches had been closed. That was the breach. Nothing excuses the delay of 28 years in asking for that money. The breach is the closing of the branch, according to New York law? That's correct. Even without a demand, without an inquiry, the closing of the branch, and even assuming an obligation of the corporate parent to honor the deposit upon such closing, or upon a demand at least, there's a breach upon simply closing the branch. That's been the law since 1917, Your Honor, and it was reaffirmed three times in the context of the Vietnamese cases in the early 80s by three separate district courts, considering the question exhaustively, including Judge Weinfeld, not known for sloppy opinions. Your Honor, I'm going to sit down and make sure that Ms. Padilla has her full five minutes. Thank you. Thank you, counsel. Thank you. Good morning. May it please the court. Angela Padilla, Morrison and Forster for Chow Tong Bank, formerly known as Bank of Communications. Your Honor, I've asked, Your Honors, I've asked only for a small amount of time because Chow Tong's role in this sad story, admittedly sad story, is very small. There is one plaintiff who is alleged to have had an account with Chow Tong, Mr. Hu Huynh. He is not alleged ever to have been either a citizen of California or a resident of California. He is not alleged to have ever had any contact whatsoever with the state of California. As the court knows from the briefs, Chow Tong Bank is a Taiwanese bank, has always been so, and never had any branches in the United States until 1989, long after Chow Tong started to do business in Taiwan and long after the closure of its office in Saigon and other Vietnamese cities. The bottom line with respect to Chow Tong Bank is that either the law of Taiwan applies or the law of Vietnam applies. And even if for some odd reason, respectfully, Your Honors decide that California law has some interest in Chow Tong's relationship with a single Vietnamese depositor, even then under California's borrowing statute, because the statute of limitations has run in the location where the breach occurred, which was Vietnam, or alternatively, the location that has the greatest relationship with the parties and the occurrence, which was Taiwan, because of that, even under California law, the statute of limitations unfortunately has run for Mr. Huynh's claims to his money. With respect to Taiwan law- Okay, counsel, may I just ask a question about the appellants here are arguing that Section 348 of the California Code of Civil Procedure, but you argue 361. But isn't there an exception to 361, providing that the borrowing statute does not apply to one who has been a citizen of this state and who has held the cause of action from the time it accrued? What is your answer to that? My answer to that, Your Honor, is that the one plaintiff who has a claim against Chow Tong has never been a citizen of the state of California. That's a good answer, thank you. Yes, and very briefly, Your Honors, because really I could almost submit this on the papers, which I think were quite clear, but I do want to just make two brief points. The first is, with respect to Taiwan law, we submitted below, and it's part of the record on appeal, the declaration of Mr. Chun-Yi Cheng, who is a Taiwan attorney, and Mr. Cheng very concisely in a single page laid out all of the applicable Taiwanese statutes of limitations, as well as any applicable accrual and tolling doctrines that would apply in Taiwan. The bottom line is that in Taiwan, that the longest possible statute of limitations would have been 15 years. That statute would have run under Taiwan law from the moment in time when demand could have been made for the money, and that would have been 1975, as alleged in the complaint. 15 years later would have been 1990. So under Taiwan law, unfortunately the claim is too late. And with respect to Vietnam law, although there has been the battle of these declarations of our expert, Lucy Wayne, and of the plaintiff's expert, Mr. Ta, both parties have moved to oppose the request for judicial notice of the declaration of Mr. Ta, who is the plaintiff's expert on Taiwanese law because it was not part of the record below. Indeed, we have found no evidence that it has ever been filed in any court, and moreover, they haven't met the requirements either of Federal Rule of Evidence 201 or Appellate Rule 44.1. Even under Vietnam law, should your honors look at the battle of experts here, what you will see is that Ms. Wayne has demonstrated that under the best possible scenario, the statute of limitations for these claims ran in June of 1994. And this is on page five of the declaration of Lucy Wayne where she discusses the lengthiest possible statute of limitations that could have applied here and concludes that for this type of breach of contract, the statute would have been three years from July 1st, 1991, which would have been June 30th, 1994. Finally, in closing, I want to note that none of the plaintiffs alleged in this complaint are citizens of California. Some are residents, some of their representatives are residents, but none are alleged to have been citizens of California. And in closing, there's no doubt. Is today or at the time, at some earlier time? At the time or even with respect to today, I believe. None of them are citizens even today? I believe that's right, and if Mr., if my opponent has a different view of that, I'm sure he'll tell you, but I believe that's correct. Of course, in closing, these are sad circumstances, and there are many wrongs from the Vietnam War that do deserve redress, but unfortunately, not all of them can be redressed. And with respect to Mr. Huynh, in this matter, and Chow Tung Bank, we respectfully submit that his claims are barred under any applicable law. Thank you, counsel. Mr. Sayre, you have some reserve time? Yes, sir, thank you. Counsel misspoke or misstated just recently. Most of the plaintiff representatives in this case, and indeed most of the class of plaintiffs, are in fact California citizens, residents of the state of California. There are some exceptions. But you would agree that none were California citizens at the time of the closure of the bank, let's say? With one exception. Mr. Fernandez, who was a United States soldier, although a resident at the time of the country of South Vietnam, was an American and California citizen at the time  if you will, into the bank in Saigon. Secondly, previous counsel also misspoke, shall we say, and respectfully, as to paragraph 48 of the complaint, the allegations to give the court a sample, part of it is plaintiffs. I'm sorry for this interruption. Yes, of course. On that last point. Yes. Statute says has the claim, has the claim, the cause of action, at the time they are resident in California. Yes. Do they have the cause of action, if the statute hasn't begun to run, do they have the claim prior to the time they become residents of California? If they're under the communist regime and or in a refugee camp, do they hold the claim? Can they sue on the claim? Or are they under, and it's not incompetence, are they under an incapacity to sue? Impossibility, perhaps. I think they don't have the claim under California law until they come to California. I think the court, the justice is quite correct on that. If I may, back to 48. Paragraph 48, we allege as plaintiffs that the Vietnamese branches were confiscated by the conquering governments. Defendants represented the plaintiffs, again, quote from paragraph 48 of the complaint, and continue to represent the plaintiffs that their deposits were compensated when in truth that was not the case. We have never said that or alleged that they were confiscated, a misstatement, I'm sure. Paragraph 51 of our complaint states, the defendants unjustly blocked accounts, refused to return the looted assets, enriched themselves with the derivative profits and concealed information value and derivative profits of the looted assets from the plaintiffs. Actions in furtherance of defendants' fraud included a blocking and confiscating plaintiffs' accounts in advance of any official compulsion to do so, refusal to allow withdrawals while simultaneously accepting deposits from others, which deposits they never intended to return, their continued retention of assets and failing to provide an accounting and restitution to plaintiffs. We have alleged and will prove to a prior fact if permitted to do so that the time that our clients were not being permitted to withdraw their accounts, that they were advertising to the soon-to-be refugees, bring your money to our bank. We are an international bank and your money will be safe here. And literally people were taking money out of Vietnamese banks in bags of cash and carrying it to Chase Manhattan Bank for the security that they presumed came from an international bank. Paragraph.  I don't know. I could not inform the court other than a lack of English, a lack of knowledge about the American system. I could not tell the court. I was only involved when they came to see me. I would just add paragraph 52 as an example of the misrepresentation. Plaintiff Jen Nguyen shortly before the fall of Saigon entered the Saigon branch of defendant that Chase Manhattan Bank and requested the withdrawal of the funds in one of her accounts. The banks refused to allow her to make the withdrawal. At the very same time, the bank was accepting deposits which others were making. Some depositors had come with bags full of cash. Defendant Jen Nguyen was able that day to obtain a partial withdrawal from one account with pleading, begging, weeping, and finally a threat of suicide. As to the remaining funds in her first account and as to her second account, she was told notwithstanding the imminent fall of the Saigon government not to worry that the Chase Manhattan Bank and her money and it was safe, had her money and it was safe. Don't you think at a minimum you should have to make a showing to the district court in order to avoid the application of the statute of limitation that there's incompetency in some form or fashion at a minimum by virtue of misrepresentation from the banks from the time they became resident of California until the time when they made the new man, and that is the filing of the suit? I'd like to be able to do that if I were permitted to do so, yes. And I think that we can. Just to close and I don't want to prolong this and if there are any questions that you're particularly interested in, please let me know. Think of Garcia, which is the Supreme Court of New York, Court of Appeals. It is the supreme authority on New York law. It has never been overturned. It is good law and it does not say that the closing of the branch begins the running of the statute of limitations unless there is a clear and unequivocal repudiation. And the very type of response that was made in the Garcia case to Mr. Garcia and Mr. Dominguez is the same type, almost word for word, the response made by the banks in this case to the people who made inquiry about their funds. There was no clear and unequivocal repudiation. Secondly, we have strikingly similar situations. We have people who are in the throes of an advancing dictatorship, not knowing whether they're going to live or die, not knowing whether they're going to be able to escape, chaos, and someone says, our bank is an international reputable bank. It's going to be safe no matter what happens. Don't worry about it. We're all over the world. And they took that on faith and they put their money on faith. And now those banks are back in business with that very same government. Thank you, counsel. The case just argued will be submitted for decision. And we will now hear argument in United States versus Ferrante. Thank you.
judges: Dw Nelson, O'Scannlain